STATE OF CONNECTICUT *v.* RAYMOND HARDY
(AC 23960)

Dranginis, West and McLachlan, Js.

---

Argued May 25—officially released October 26, 2004

*Deborah G. Stevenson,* special public defender, for the appellant (defendant).

*Marjorie Allen Dauster,* senior assistant state's attorney, with whom, on the brief, were *David I. Cohen,* state's attorney, *Michael A. DeJoseph,* deputy assistant state's attorney, and *Tristan Scott Cowperthwait,* certified legal intern, for the appellee (state).

### Opinion

WEST, J. The defendant, Raymond Hardy, appeals from the judgment of conviction, rendered after a trial to the court, of robbery in the first degree in violation of General Statutes § 53a-134 (a) (2) and criminal use of a firearm or electronic defense weapon in violation of General Statutes § 53a-216. The defendant claims on appeal that (1) there was insufficient evidence to support his conviction of robbery in the first degree and (2) the court improperly concluded that the air pistol in evidence was a "firearm." We affirm in part and reverse in part the judgment of the trial court.

The court reasonably could have found the following facts. On December 9, 2000, the victim, an employee of Norwalk Taxi, was dispatched to 12 North Taylor Avenue in Norwalk. Upon arrival, Leland Brown approached the victim's taxicab from the front of the

vehicle and got in through the back door on the driver's side. The victim turned his head to ask Brown where he wanted to go and Brown put the barrel portion of a gun to the victim's neck. Brown demanded that the victim give him all of his money and, in response, the victim gave him more than $800 in cash. Brown then exited the taxicab, and the victim informed his dispatcher of the incident. The dispatcher notified the police and, shortly thereafter, the police arrived at the scene of the robbery. The victim told the police that the robber was an African-American male who wore dark jeans, a jacket patterned in camouflage or animal print and a wool hat. The victim also told the police that one of the bills stolen had an order for Chinese food written on it in brown marker.

After Brown exited the taxicab, he and the defendant, who waited nearby, ran back to the defendant's apartment at 16 Ferris Avenue. While running, the men were spotted by Tirso Gomez, a United States Postal Service employee who was working in the area. A short time later, Gomez was questioned by the police. Gomez informed the police that he saw the defendant and another man running toward the defendant's apartment from the direction of the robbery, which was approximately one-half block away. Gomez was familiar with the defendant, provided the police the defendant's name and address, and told them that the defendant was wearing a yellow jacket or sweater and that one of the men was wearing a cap.

Acting on that information, the police surrounded 16 Ferris Avenue and began calling the telephone in the defendant's apartment. Eventually, Brown exited the building, wearing a camouflage jacket and a hat, and was arrested and taken into custody. The police searched Brown and found $339 on his person, including a bill that "had some kind of writing on it." Outside

the defendant's apartment, the victim identified Brown as the man who robbed him earlier that day.

Eventually, the police forcibly entered the defendant's apartment. Once inside, the police found a silver Crosman air pistol hidden in a clothes hamper between the defendant's bedroom and his mother's bedroom, an information manual for the air pistol, and the defendant, wearing a yellow and gray sweater, hiding underneath his couch. The defendant was arrested and, after he was in custody, told the police that the rest of the money taken during the robbery was hidden in his videocassette recorder. The police returned to the defendant's apartment and recovered an additional $555 from inside the videocassette recorder in his bedroom.

The defendant was tried under the accessory theory of liability and was convicted of robbery in the first degree in violation of § 53a-134 (a) (2) and criminal use of a firearm or electronic defense weapon in violation of § 53a-216. The court sentenced the defendant to twenty years incarceration, suspended after ten years, on the robbery conviction, five years incarceration to run concurrent to his twenty year sentence on his conviction of criminal use of a firearm or electronic defense weapon, and five years probation. The defendant appeals to this court. Additional facts will be set forth as necessary.

I

We begin by addressing the issue of whether the defendant's conviction of both robbery in the first degree pursuant to § 53a-134 (a) (2) and criminal use of a firearm or electronic defense weapon pursuant to § 53a-216 was proper. Although the defendant did not raise that issue at trial or on appeal, the state informed this court, at oral argument, that such a violation of the statute did occur. Accordingly, we address the issue sua sponte and agree with the state that the conviction

of criminal use of a firearm or electronic defense weapon pursuant to § 53a-216 was improper.

Section 53a-216 (a) provides: "A person is guilty of criminal use of a firearm or electronic defense weapon when he commits any class A, B or C or unclassified felony as defined in section 53a-25 and in the commission of such felony he uses or threatens the use of a pistol, revolver, machine gun, shotgun, rifle or other firearm or electronic defense weapon. *No person shall be convicted of criminal use of a firearm or electronic defense weapon and the underlying felony upon the same transaction* but such person may be charged and prosecuted for both such offenses upon the same information." (Emphasis added.)

The defendant in this case was convicted of criminal use of a firearm *and* the underlying felony of robbery in the first degree. It was improper for the court to have convicted the defendant of both crimes charged in light of the statutory prohibition against such a double conviction. Consequently, we reverse the judgment as to the conviction of criminal use of a firearm or electronic defense weapon in violation of § 53a-216, and remand the case with direction to vacate that conviction and to resentence the defendant accordingly.

## II

We now address the defendant's claim that there was insufficient evidence to support his conviction of robbery in the first degree. Specifically, the defendant argues that there was insufficient evidence to prove (1) his identity as a participant in the robbery, (2) his intent to commit the robbery, (3) that either he or Brown was armed with a deadly weapon and (4) that the Crosman air pistol was capable of discharging a shot. We are not persuaded.

The standards by which we review claims of insufficient evidence are well established. "When reviewing

a sufficiency of the evidence claim, our courts apply a two-prong[ed] test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the jury reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt." (Internal quotation marks omitted.) *State v. Eastwood*, 83 Conn. App. 452, 474–75, 850 A.2d 234 (2004).

"Since under our law both principals and accessories are treated as principals . . . if the evidence, taken in the light most favorable to sustaining the verdict, establishes that [the defendant] committed the [crime] charged or did some act which forms . . . a part thereof, or directly or indirectly counseled or procured any persons to commit the offenses or do any act forming a part thereof, then the convictions must stand. . . . To prove guilt as a principal, the state must prove each element of the offense charged beyond a reasonable doubt. To be guilty as an accessory one must share the criminal intent and community of unlawful purpose with the perpetrator of the crime and one must knowingly and wilfully assist the perpetrator in the acts which prepare for, facilitate or consummate it." (Internal quotation marks omitted.) *State v. Diaz*, 237 Conn. 518, 543, 679 A.2d 902 (1996). With those principles in mind, we address the defendant's specific arguments.

## A

### Insufficient Evidence to Prove Identity

In his brief to this court, the defendant highlights all the "evidence that [he] was not the robber" and relies heavily on that evidence to demonstrate that the state did not prove his identity as a participant in the robbery. The state, however, prosecuted the defendant under the theory of accessory liability and did not allege that

he was "the robber," but rather an accessory to the crime.[1] His argument in that regard, therefore, is unavailing.

Furthermore, the state provided ample evidence to prove the identity of the defendant as an accomplice to the robbery. The state provided the testimony of Gomez, a United States Postal Service employee, who witnessed the defendant, who was wearing a yellow jacket or sweater, and an African-American man, approximately one-half block from where the robbery took place, running away from the direction of the robbery toward the defendant's apartment. The state offered evidence that the defendant and Brown were found in the defendant's apartment at the address provided by Gomez. The defendant and Brown were dressed as described by the victim and by Gomez. The defendant and Brown both hid in the defendant's apartment while the police attempted to apprehend them. The defendant had, hidden in his apartment, a Crosman air pistol with a silver barrel and its corresponding information manual. The defendant and Brown each had possession of a large amount of cash, totaling the approximate amount stolen from the victim; Brown's portion was found on his person, and the defendant's portion was found hidden in his bedroom after he told the police its location. After Brown surrendered to the police, the defendant continued to hide underneath his couch until he was found there by the police. On the basis of that evidence, we conclude that the state presented ample evidence to prove, beyond a reasonable

---

[1] General Statutes § 53a-8 (a) provides in relevant part: "A person, acting with the mental state required for commission of an offense, who solicits, requests, commands, importunes or intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable for such conduct and may be prosecuted and punished as if he were the principal offender."

doubt, the defendant's identity as an accomplice to the robbery.[2]

## B

### Insufficient Evidence to Prove Intent

The defendant next argues that the state did not prove that he had the intent to participate in the robbery. We disagree.

The state adduced evidence from which the court reasonably could have inferred that Brown committed the robbery while the defendant waited nearby. The state provided evidence that the defendant and Brown fled the scene of the robbery together and took up safe haven in the defendant's apartment where the defendant harbored Brown while the police attempted to apprehend them. The state provided evidence that the weapon that was used during the robbery was found in the defendant's clothes hamper. The state provided evidence that the defendant and Brown divided the proceeds of the robbery.

On the basis of that evidence, we conclude that the state presented sufficient evidence to prove beyond a reasonable doubt that the defendant intended to assist Brown in the commission of the robbery and permanently to deprive the victim of the money that was taken.

## C

### Insufficient Evidence that Air Pistol Was Actual Weapon Used or that Any Other Weapon Was Used

The defendant next argues that the state failed to prove that the Crosman air pistol found in his apartment

---

[2] The defendant also argues that the victim, who identified Brown as the robber on the day of the robbery, mistakenly identified the defendant, in court, as the robber. We need not address the sufficiency of the evidence regarding the victim's inconsistent identifications, however, because the state did not claim that the defendant was the actual robber, nor did it use the in-court identification to its advantage.

was the actual weapon used in the robbery or that any weapon was used in the robbery. We disagree.

The state provided the court with the following evidence, as testified to by the victim, that a weapon was used during the commission of the robbery:

"[The Prosecutor]: What happened next?

"[The Witness]: I had turned my head to ask him where he's going, and then he put a gun up to my neck . . . . Told me to give me—give him my money.

"[The Prosecutor]: Did you have an opportunity to see the gun?

"[The Witness]: Very little. All I seen was a little silver.

"[The Prosecutor]: Would you say you only saw the barrel portion of the gun?

"[The Witness]: Yes."

On the basis of that testimony, the court had before it sufficient evidence from which to conclude that a weapon was used in the robbery. That reasonable inference was further supported by the fact that a Crosman air pistol, silver in color, was found hidden in the defendant's apartment when the police searched it that same day. There was sufficient evidence before the court to conclude, therefore, that the silver weapon used by Brown in the robbery was the same silver air pistol that was found in the defendant's apartment where he and Brown were hiding immediately after the robbery.

D

Insufficient Evidence Air Pistol Was Weapon Capable of Firing Shot

The defendant next argues that the state did not produce sufficient evidence that the Crosman air pistol found in his apartment was a weapon from which "a

shot may be discharged" pursuant to § 53a-134 (a) (2) as defined by General Statutes § 53a-3 (6).[3] We disagree.

The state provided the testimony of Thomas Roncinske, a detective, who testified that he test fired the air pistol and found it "in firing order." Roncinske testified to the court that he installed a carbon dioxide cartridge into the air pistol and fired a BB from the air pistol. Roncinske further testified to the court that it was his opinion that the weapon was operational as of the date of his direct examination.

Although the defendant argues that it was not operational because it was not found with a carbon dioxide cartridge in the defendant's apartment, we find that argument unpersuasive. Once a carbon dioxide cartridge was inserted in the weapon, it was *capable* of discharging a shot, according to Roncinske. Simply because no carbon dioxide was found with the weapon in the defendant's apartment does not warrant the conclusion that it was not *capable* of firing a shot.

We also find unavailing the defendant's argument that the state did not prove that the weapon was capable of firing a shot because it test fired the air pistol with a BB, rather than a .177 caliber pellet as is typically used in the air pistol. The statute requires only that the state prove that the weapon was capable of firing a shot—it does not specify what type of ammunition must be used. The court had before it sufficient evidence to conclude that the air pistol found in the defendant's apartment was capable of firing a shot.

III

The defendant finally argues that the conviction of both crimes was improper because the Crosman air

---

[3] General Statutes § 53a-3 (6) provides in relevant part: " 'Deadly weapon' means any weapon, whether loaded or unloaded, from which a shot may be discharged, or a switchblade knife, gravity knife, billy, blackjack, bludgeon, or metal knuckles. . . ."

pistol found in his apartment was not a "firearm" under the dictionary definition discussed in *State* v. *Brown*, 259 Conn. 799, 809, 792 A.2d 86 (2002). We need not address that claim with regard to the robbery conviction because the defendant was convicted under § 53a-134 (a) (2), robbery with a "deadly weapon," *not* robbery with a "firearm." The case relied on by the defendant discusses the statutory and dictionary definitions of "firearm"—not "deadly weapon"—and, accordingly, is not relevant to his conviction.

We also need not address the claim with regard to the conviction of criminal use of a firearm or electronic defense weapon because we already have concluded that this conviction was improper.

The judgment is reversed only as to the conviction of criminal use of a firearm or electronic defense weapon in violation of § 53a-216 and the case is remanded with direction to render judgment of acquittal on that charge and to resentence the defendant on the conviction of robbery in the first degree in violation of § 53a-134 (a) (2). The judgment is affirmed in all other respects.

In this opinion the other judges concurred.