******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

# STATE OF CONNECTICUT *v.* ANTHONY CRUZ
## (AC 45685)

Bright, C. J., and Moll and Westbrook, Js.

*Syllabus*

Convicted of the crimes of assault in the first degree, criminal possession of a firearm and carrying a pistol without a permit, the defendant appealed to this court, claiming that his constitutional rights to confrontation and a fair trial were violated as a result of misrepresentations made by the state in moving to join his case for trial with that of his codefendant, J. The defendant and J had entered an apartment in which C was staying and engaged in an altercation with him, during which the defendant shot C, and C stabbed J with a knife. A police detective, F, interviewed J twice. During trial, the state informed the court that it intended to offer as consciousness of guilt evidence against J a recording of only J's first interview with the police. That recording was admitted into evidence during the state's direct examination of F, and the state did not thereafter question F about the second interview or offer the recording of that interview into evidence. On cross-examination, in response to an open-ended question by defense counsel, F testified that, during the second interview, J had identified the defendant and had stated that the defendant was in C's apartment at the time of the shooting. The court denied the defendant's motion to strike F's answer but expressed concern about F's reference to the second interview, of which the jury previously had been unaware. The court then approved an agreement between the parties, under which they would each elicit limited testimony from F about the second interview. F further testified that J had later identified the defendant from a photographic array the police had prepared. During closing argument, the state relied on F's testimony as substantive evidence of the defendant's culpability. *Held* that the defendant could not prevail on his unpreserved claim that the joinder of his case with J's case for trial was improper because the state had misrepresented that the evidence in the two cases was cross admissible: it was only after F had referenced J's second interview with the police in a truthful, responsive answer to defense counsel's open-ended question on cross-examination about the police investigation that the state relied on that interview as substantive evidence against the defendant; moreover, at no point prior to that cross-examination did the state use, or suggest an intention to use, the second interview against the defendant, and the defendant abandoned any challenge to the court's denial of his motion to strike F's testimony by failing to brief a claim of error as to that issue; furthermore, defense counsel expressly agreed to the procedure approved by the trial court that permitted the state to introduce limited portions of J's second interview through F's redirect

testimony, and defense counsel failed to raise any objection to the agreement on the record.

Argued March 6—officially released July 30, 2024

*Procedural History*

Substitute information charging the defendant with the crimes of assault in the first degree, conspiracy to commit assault in the first degree, criminal possession of a firearm, criminal use of a firearm, and carrying a pistol without a permit, brought to the Superior Court in the judicial district of Hartford, where the court, *Gold, J.*, granted the state's motion to join for trial the defendant's case with that of a codefendant; thereafter, the case was tried to the jury before *Gold, J.*; verdict of guilty of assault in the first degree, criminal possession of a firearm, criminal use of a firearm and carrying a pistol without a permit; subsequently, the court vacated the verdict as to the charge of criminal use of a firearm; judgment of guilty of assault in the first degree, criminal possession of a firearm and carrying a pistol without a permit, from which the defendant appealed to this court. *Affirmed.*

*Adele V. Patterson*, for the appellant (defendant).

*James A. Killen*, senior assistant state's attorney, with whom, on the brief, were *Sharmese L. Hodge*, state's attorney, and *Emily Dewey Trudeau*, senior assistant state's attorney, for the appellee (state).

*Opinion*

MOLL, J. The defendant, Anthony Cruz, appeals from the judgment of conviction, rendered after a jury trial, of assault in the first degree in violation of General Statutes § 53a-59 (a) (5), criminal possession of a firearm in violation of General Statutes (Rev. to 2019) § 53a-217, and carrying a pistol without a permit in violation of General Statutes (Rev. to 2019) § 29-35 (a). On appeal,

the defendant claims that the state made certain purported misrepresentations in moving to join his case with a codefendant's case that resulted in an improper joinder of the cases and violated his constitutional rights to confrontation and to a fair trial pursuant to the sixth and fourteenth amendments to the United States constitution. We disagree and, accordingly, affirm the judgment of conviction.

The following facts, which the jury reasonably could have found, and procedural history are relevant to our resolution of the defendant's claim. Sometime prior to September 10, 2019, an incident occurred between the defendant and Marcelo Campos. Specifically, Campos witnessed the defendant attempting to get into Campos' car because the defendant believed that Campos had stolen liquor from him. Campos called the police to report the defendant, but the defendant was not arrested in connection with this incident.

During the early morning hours of September 10, 2019, Campos was at an apartment located at 433 Zion Street in Hartford (apartment), which was situated above a bodega owned by the defendant's family. Campos, who was living out of his car at the time, previously had been permitted by the owner of the building to stay in the apartment; however, Campos did not have permission to be at the apartment that morning.

While on the back porch of the apartment, Campos observed a group of individuals outside, one of whom was carrying a gun. Campos went into the apartment, looked out of a window, and saw the group in front of the building, at which point he recognized the defendant as the individual holding the gun. Thereafter, the group gained entry to the building, ascended the stairs, and entered the apartment. At some point, the defendant told Campos, "you're mine, motherfucker." Two of the other individuals in the group, including Jamal Johnson,

approached Campos and started swinging at him. Campos, who was armed with two knives, stabbed Johnson. During this tussle, the defendant shot Campos. Following the gunshot, Johnson and the other individual who had been attacking Campos dispersed, with one of them stating, "not here, Ant." The defendant then shot Campos a second time and fled. Campos managed to call 911 and was taken to Hartford Hospital (hospital) to be treated for his injuries, which resulted, inter alia, in the removal of his spleen and a portion of his small intestine.

That same day, Johnson arrived at the hospital to receive treatment for his stab wounds. While at the hospital, Johnson told a police officer who had been dispatched to investigate his stabbing that he had been stabbed in the vicinity of 465 Zion Street in Hartford, which was approximately four or five buildings north of the apartment, by an unidentified male who had approached him asking for money.

On September 30, 2019, two members of the Hartford Police Department, including Detective Philip Fuschino, interviewed Johnson (first interview). During the first interview, which was recorded, Johnson initially maintained his narrative that an unidentified male stabbed him in the area of 465 Zion Street. Johnson's account changed as the first interview progressed, with Johnson later stating that (1) an unknown assailant had stabbed him downstairs from the apartment (i.e., 433 Zion Street), (2) he chased the assailant upstairs into the apartment, (3) he fought with the assailant, and (4) he exited the apartment after hearing a gunshot. At no point during the first interview did Johnson name the defendant or identify the shooter.

On October 8, 2019, the defendant was arrested in connection with Campos' shooting. Subsequently, on January 3, 2020, Johnson was arrested vis-à-vis Campos'

shooting. On the day of his arrest, Johnson was interviewed for a second time by Fuschino and another detective (second interview). During the second interview, which was also recorded, Johnson stated that (1) he knew the defendant by the nickname "Ant," (2) he and the defendant entered the apartment on September 10, 2019, "to fuck up" Campos, and (3) before they had entered the apartment, the defendant was "talking about all the problems he had with Campos . . . ." Johnson never indicated during the second interview that he saw the defendant with a gun or witnessed the defendant shoot at Campos. Subsequently, Johnson picked the defendant out of a photographic array prepared by the police.

In its operative long form information against the defendant, dated April 11, 2022, the state charged the defendant with (1) assault in the first degree in violation of § 53a-59 (a) (5), (2) conspiracy to commit assault in the first degree in violation of General Statutes §§ 53a-48 and 53a-59 (a) (5), (3) criminal possession of a firearm in violation of General Statutes (Rev. to 2019) § 53a-217, (4) criminal use of a firearm in violation of General Statutes § 53a-216, and (5) carrying a pistol without a permit in violation of General Statutes (Rev. to 2019) § 29-35 (a). In its operative information against Johnson, dated April 11, 2022, the state charged Johnson with conspiracy to commit assault in the first degree in violation of §§ 53a-48 and 53a-59 (a) (5).[1]

---

[1] In prior informations read to the jury during the first day of trial on April 7, 2022, the state also charged the defendant and Johnson each with conspiracy to commit assault in the first degree in violation of §§ 53a-48 and 53a-59 (a) (4). On April 11, 2022, the trial court, *Gold, J.*, determined that these conspiracy charges were precluded by Wharton's rule, which "provides that [a]n agreement by two persons to commit a particular crime cannot be prosecuted as a conspiracy when the crime is of such a nature as to necessarily require the participation of two persons for its commission." (Emphasis omitted; internal quotation marks omitted.) *State* v. *Jones*, 35 Conn. App. 839, 849, 647 A.2d 43 (1994). Thereafter, the state filed its operative informations, which omitted these conspiracy charges.

On March 1, 2022, pursuant to Practice Book § 41-19,[2] the state filed a motion for joinder of the defendant's case with Johnson's case for trial. The state asserted in relevant part that (1) the defendant and Johnson were "charged with conspiring to assault the same victim, for the same motive, at the same time and place," (2) "[a]ll evidence against one defendant, to include witness testimony, would be used in an identical manner against the other," and (3) "the proffered defenses raised by [the defendant's trial counsel (defense counsel) and Johnson's trial counsel (Johnson's counsel)] are not in conflict, as [the defendant and Johnson] each alleged to have not been present for the shooting, and to have no idea as to the identity of the shooter." On March 3, 2022, the trial court, *Gold, J.*, held a hearing on the motion for joinder. The court summarized that the "motion sets forth the fact that the evidence is the same, in many respects, as to both [the defendant and Johnson]. Both [the defendant and Johnson] have been charged in connection with the same incident. The state represents that the defenses that will be raised by . . . Johnson and [the defendant] are not, in any way, antagonistic. Nor will they require the jury to reject one in order to find the other." Defense counsel and Johnson's counsel did not object to the motion. The court further inquired whether there was any concern about the possibility that the defendant's and Johnson's respective defenses would be mutually antagonistic. Defense counsel and Johnson's counsel responded that they did not discern any risk of presenting antagonistic defenses. The court, without objection, granted the motion for joinder.[3]

---

[2] Practice Book § 41-19 provides: "The judicial authority may, upon its own motion or the motion of any party, order that two or more informations, whether against the same defendant or different defendants, be tried together."

[3] On March 22, 2022, prior to jury selection, the court summarized the hearing on the motion for joinder, stating in relevant part that it had (1) granted the motion without objection and (2) been "assured by [defense counsel and Johnson's counsel] that they saw no potential for [obstacles

On March 24, 2022, the court held a hearing to address outstanding pretrial motions. The state requested that the court address any preliminary objections to exhibits set forth in a proposed exhibit list that the state had circulated to the court and to opposing counsel. In response, defense counsel stated: "I can make it easy for you. I don't have objections to anything." The court then inquired whether the state intended to introduce "Johnson's statement . . . ." The state represented that it planned to offer recordings of the first and second interviews as consciousness of guilt evidence, not for the truth of the matter asserted, against Johnson only. The state further stated that a limiting instruction preceding the playbacks of the first and second interviews "would be appropriate just because of any potential *Crawford*[4] issues as they relate to [the defendant]." (Footnote added.) With regard to the second interview, the state represented that Johnson "maintain[ed] that [the defendant] did not have a weapon and was not the shooter and that [the shooter] was a third party unknown to both of them." In light of that representation, defense counsel did not object to the admission of the second interview as proffered by the state. With the consent of defense counsel and Johnson's counsel, the court indicated that it would review the first and second interviews in advance of trial.

The joined cases were tried to a jury on April 7, 8 and 11, 2022. Prior to the start of evidence on April 7,

to joinder] occurring, anything in the nature of inconsistent defenses." Additionally, at the outset of the first day of trial on April 7, 2022, the court iterated that the respective cases against the defendant and Johnson had been joined without objection.

[4] "In *Crawford* v. *Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004), the United States Supreme Court held that testimonial hearsay is admissible against a criminal defendant at trial only if the defendant had a prior opportunity for cross-examination and the witness is unavailable to testify at trial." *State* v. *Armadore*, 186 Conn. App. 140, 148, 198 A.3d 586 (2018), aff'd, 338 Conn. 407, 258 A.3d 601 (2021).

2022, and outside of the jury's presence, the following colloquy occurred between the court and defense counsel regarding the second interview:

"The Court: . . . Johnson in [the second interview] could be seen . . . to some degree [to] implicate [the defendant] in the crimes by putting [the defendant] at the scene of the crime at the time of the crime. I did not hear anything specific that . . . Johnson said that [the defendant] was involved in the shooting or that he possessed the handgun. I think, in fact, [Johnson] said he did not see [the defendant] with a handgun. But [Johnson] does say [the defendant] was . . . at the scene of the crime at the time of the shooting. So, to the extent that will assist the state, one might see that as somewhat of a *Bruton*[5] problem that could warrant a severance. But it's my understanding that you have no objection to that statement being played, and you continue to have no objection to the joinder of these cases. Am I correct in my understanding?

"[Defense Counsel]: One hundred percent correct.

"The Court: One hundred percent correct. All right. So, you're not seeking those statements made by Johnson that put [the defendant] at the scene to be redacted. Correct?

---

[5] "[I]n [*Bruton* v. *United States*, 391 U.S. 123, 88 S. Ct. 1620, 20 L. Ed. 2d 476 (1968)], the United States Supreme Court held that a defendant is deprived of his rights under the confrontation clause [of the sixth amendment to the United States constitution] when his codefendant's incriminating confession is introduced at their joint trial, even if the jury is instructed to consider that confession only against the codefendant. The *Bruton* court held that the admission of the codefendant's statements added substantial, perhaps even critical weight to the [g]overnment's case [against the defendant] in a form not subject to cross-examining, since [the codefendant] did not take the stand, and therefore, [the defendant] had been denied his rights of confrontation. . . . In *Bruton* . . . the court emphasized that it was dealing with a case in which the hearsay statement inculpating [the defendant] was clearly inadmissible against him under traditional rules of evidence." (Citation omitted; internal quotation marks omitted.) *State* v. *Robertson*, 254 Conn. 739, 765, 760 A.2d 82 (2000).

"[Defense Counsel]: No, sir.

"The Court: And you are not seeking, because of those statements, to have the matter severed?

"[Defense Counsel]: That's correct." (Footnote added.)

On April 8, 2022, outside of the jury's presence, the state informed the court that it intended to offer the first interview as consciousness of guilt evidence, but it did not plan to offer the second interview. Later that day, the state called Fuschino as a witness. During Fuschino's direct examination, the court, without objection, admitted the first interview in full, which was played for the jury. The state did not question Fuschino regarding the second interview or offer the second interview.

On cross-examination, defense counsel questioned Fuschino about the police investigation into Campos' shooting. During cross-examination, the following colloquy occurred between defense counsel and Fuschino:

"[Defense Counsel]: Okay. So, at the end of the day, you have . . . Campos telling you that [the defendant] is responsible for shooting him, right?[6]

"[Fuschino]: Correct.

"[Defense Counsel]: That there is no other independent evidence whatsoever that would support that other than [Campos'] worth?

"[Fuschino]: Well, during the second interview of . . . Johnson, he identified [the defendant]." (Footnote added.)

Defense counsel immediately moved to strike Fuschino's answer. The state objected, arguing that Fuschino's answer was responsive to defense counsel's question. After excusing the jury, the court stated that

---

[6] On September 23, 2019, Campos provided a statement to Fuschino identifying the defendant as the shooter.

defense counsel had asked an "open-ended question" regarding evidence that the police had gathered connecting the defendant to Campos' shooting, to which Fuschino had provided a responsive answer. The court then expressed concern about Fuschino's reference to the second interview, of which the jury previously had been unaware, and indicated that additional action was required to address the issue. The court reserved to the next trial date its ruling on the motion to strike and its consideration of how to rectify the issue caused by Fuschino's testimony.

On April 11, 2022, outside of the jury's presence, the court denied the motion to strike Fuschino's testimony, determining that Fuschino "did respond appropriately to the question that had been posed by [defense counsel]." Nevertheless, the court determined that it was "incumbent upon [the court] to find some way to protect the rights of [the defendant and Johnson] on one hand, [and] the state's on the other by limiting the extent to which there can be follow up to that." The court then delineated, for the record, an off-the-record agreement reached with counsel (agreement), pursuant to which (1) Fuschino would resume the witness stand, (2) the court would repeat the last two questions that defense counsel had posed to Fuschino and Fuschino's attendant answers, (3) the court would explain to the jury that (a) Johnson had participated in a second interview with the police on the day of his arrest, which interview was conducted by Fuschino, along with another detective, largely in the same fashion as the first interview, and (b) the second interview would not be played for the jury, but counsel would be permitted to ask a few narrow questions regarding the second interview, (4) defense counsel would ask two leading questions to Fuschino about the second interview, reflecting that Johnson never indicated that he saw the defendant either (a) with a gun or (b) shoot Campos, and (5) the

state would be afforded an opportunity for redirect examination, which, insofar as it delved into the second interview, would be limited to asking leading questions indicating that (a) Johnson and the defendant entered the apartment to " 'fuck . . . Campos up,' " (b) Johnson referred to the defendant by the nickname "Ant," (c) Johnson selected the defendant's photograph out of an array of photographs prepared by the police, and (d) the defendant "had issues" with Campos. The court noted that it was "trying to find a way to almost thread a needle allowing enough evidence in so as to offset any suggestion that there was no other evidence against [the defendant] but, at the same time, not allowing that single [question] to throw open the door completely to allow, in essence, the whole second interview . . . to come in." Defense counsel affirmed that he did not object to this procedure.

Before recalling the jury, the court reviewed proposed jury instructions with counsel. In discussing a proposed instruction regarding consciousness of guilt with respect to the first interview, the court inquired whether the instruction should also apply to the evidence concerning the second interview that would be adduced pursuant to the agreement. The state responded that it was seeking to use evidence vis-à-vis the second interview as substantive evidence against the defendant because it was defense counsel who had brought the second interview to the jury's attention. The court responded: "Yeah. I mean, I guess that's going to be argued by all sides substantively." Defense counsel did not object or otherwise interject during this discussion.

After the jury had returned to the courtroom, in accordance with the agreement, the court provided the jury with additional information concerning the second interview. Thereafter, Fuschino resumed the witness stand. On cross-examination, Fuschino testified that,

during the second interview, Johnson never indicated that he saw the defendant either (1) with a gun or (2) fire a weapon at Campos. On redirect examination, Fuschino testified that, during the second interview, Johnson stated that (1) he knew the defendant by the nickname "Ant," (2) he and the defendant entered the apartment "to fuck up . . . Campos," and (3) before entering the apartment, the defendant "was talking about all the problems he had with Campos . . . ." Fuschino further testified that Johnson later picked out the defendant from a photographic array.

During its closing argument and rebuttal, the state relied on the second interview as substantive evidence incriminating the defendant. Thereafter, in charging the jury, the court provided a consciousness of guilt instruction as to the first interview and instructed the jury that it could not consider that evidence with respect to the charges against the defendant. The court's jury instructions did not expressly refer to the second interview.

On April 12, 2022, the jury found the defendant guilty of the charges of assault in the first degree, criminal possession of a firearm, criminal use of a firearm, and carrying a pistol without a permit; however, the jury acquitted him of the conspiracy to commit assault in the first degree charge. As to Johnson, the jury found him not guilty of the conspiracy to commit assault in the first degree charge. On July 12, 2022, after vacating the defendant's conviction of criminal use of a firearm,[7]

---

[7] The court vacated the criminal use of a firearm conviction on the basis of its determination that, pursuant to § 53a-216 and *State* v. *Hardy*, 85 Conn. App. 708, 858 A.2d 845 (2004), aff'd, 278 Conn. 113, 896 A.2d 755 (2006), the defendant could not be convicted "on both [the criminal use of a firearm] charge and the underlying charge, which, in this case, would be the assault in the first degree [charge]." See General Statutes § 53a-216 (a) ("[n]o person shall be convicted of criminal use of a firearm . . . and the underlying felony upon the same transaction but such person may be charged and prosecuted for both such offenses upon the same information"); *State* v. *Hardy*, supra, 712–13 (reversing judgment of conviction of criminal use of firearm when defendant was convicted of both criminal use of firearm and underlying felony of robbery in first degree).

the court sentenced the defendant to a total effective sentence of thirteen years of incarceration followed by seven years of special parole. This appeal followed.

On the basis of the defendant's appellate briefs, we decipher the crux of the defendant's claim to be that the joinder of his case with Johnson's case was improper and his constitutional rights to confrontation and to a fair trial were violated as a result of the state's purported misrepresentations, in moving for joinder, that the evidence in the respective cases against the defendant and Johnson was cross admissible. The defendant asserts that, following the grant of the motion for joinder, the state improperly relied on the second interview, which was inadmissible as to the defendant, to support its case against the defendant. The defendant maintains that, in line with its representations in support of the motion for joinder, the state should have taken action to prevent the second interview from being admitted at trial, or to minimize the effect of the admission of any portion thereof, by, for instance, agreeing with defense counsel's motion to strike Fuschino's testimony and requesting a curative instruction.[8]

Conceding that his claim is unpreserved, the defendant seeks review of his unpreserved claim pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), as modified by *In re Yasiel R.*, 317 Conn.

---

[8] The state frames the defendant's appeal as raising a claim of prosecutorial impropriety. See *State* v. *Cusson*, 210 Conn. App. 130, 164, 269 A.3d 828 ("It is well established that [i]n analyzing claims of prosecutorial [impropriety], we engage in a two step analytical process. The two steps are separate and distinct: (1) whether [impropriety] occurred in the first instance; and (2) whether that [impropriety] deprived a defendant of his due process right to a fair trial." (Internal quotation marks omitted.)), cert. denied, 343 Conn. 913, 274 A.3d 114 (2022). The defendant refutes this construction of his claim and clarified during oral argument before this court that he was not specifically raising such a claim. On the basis of this acknowledgment and our interpretation of the defendant's claim, we conclude that the prosecutorial impropriety framework is inapplicable here.

773, 781, 120 A.3d 1188 (2015). "Pursuant to *Golding*, a [defendant] can prevail on a claim of constitutional error not preserved at trial only *if all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation . . . exists and . . . deprived the [defendant] of a fair trial; and (4) if subject to harmless error analysis, the [state] has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. . . . The first two steps in the *Golding* analysis address the reviewability of the claim, [whereas] the last two steps involve the merits of the claim." (Emphasis in original; internal quotation marks omitted.) *In re Gabriella M.*, 221 Conn. App. 827, 836, 303 A.3d 319, cert. denied, 348 Conn. 925, 304 A.3d 443 (2023). We conclude that the defendant's unpreserved claim is reviewable, as (1) the record is adequate for review and (2) the claim is of constitutional magnitude alleging violations of fundamental rights. We further conclude, however, that the defendant's claim fails on the merits under the third prong of *Golding* because he has failed to demonstrate that the claimed violations of his constitutional rights occurred.

We begin by setting forth the following principles regarding the joinder of cases pursuant to Practice Book § 41-19, which permits a judicial authority to "order that two or more informations, whether against the same defendant or different defendants, be tried together." "[T]he argument for joinder is most persuasive when the offenses are based [on] the same act or criminal transaction, since it seems unduly inefficient to require the state to resolve the same issues at numerous trials. . . . In contrast, when the cases are not of the same character, the argument for joinder is far less compelling because the state must prove each offense

with separate evidence and witnesses [thus] eliminat[-ing] any real savings in time or efficiency which might otherwise be provided by a single trial. . . . Further, [a] joint trial expedites the administration of justice, reduces the congestion of trial dockets, conserves judicial time, lessens the burden [on] citizens who must sacrifice both time and money to serve [on] juries, and avoids the necessity of recalling witnesses who would otherwise be called to testify only once. . . .

"Although joint trials may serve to conserve judicial resources, we note that trials may not be joined if a substantial injustice is likely to result unless a separate trial be accorded. . . . A separate trial will be ordered [when] the defenses of the accused are antagonistic, or evidence will be introduced against one which will not be admissible against others, and it clearly appears that a joint trial will probably be prejudicial to the rights of one or more of the accused. . . . We also note that [t]he phrase prejudicial to the rights of the [accused] means something more than that a joint trial will probably be less advantageous to the accused than separate trials." (Citations omitted; internal quotation marks omitted.) *State* v. *Tyus*, 342 Conn. 784, 796–97, 272 A.3d 132 (2022). "[W]e will reverse a trial court's ruling on joinder only [when] the trial court commits an abuse of discretion that results in manifest prejudice to one or more of the defendants. . . . [I]n deciding whether to [join informations] for trial, the trial court enjoys broad discretion, which, in the absence of manifest abuse, an appellate court may not disturb." (Citation omitted; internal quotation marks omitted.) Id., 797–98.

We conclude that the constitutional violations claimed by the defendant are not supported by the record. Contrary to the defendant's position, the state did not misrepresent its intentions vis-à-vis the second interview in the motion for joinder. The second interview was not referenced expressly either in the motion

for joinder or during the March 3, 2022 hearing prior to the court's grant of the motion. During the pretrial hearing on March 24, 2022, the state notified the court and opposing counsel that it planned to offer the first and second interviews at trial; however, per the state's proffer, the first and second interviews would be offered as consciousness of guilt evidence against Johnson only. On the second day of trial, the state represented to the court and opposing counsel that it did not intend to offer the second interview, and, in accord with that representation, the state neither questioned Fuschino on direct examination about the second interview nor offered the second interview.

The record further reflects that, while questioning Fuschino on cross-examination regarding the police investigation into Campos' shooting, defense counsel elicited testimony from Fuschino that, for the first time, alerted the jury to the existence of the second interview and Johnson's identification of the defendant during that interview. After the state objected to defense counsel's motion to strike Fuschino's testimony on the ground that Fuschino's answer was responsive to the question asked, the state adduced additional portions of the second interview through Fuschino's testimony, as permitted pursuant to the agreement, and substantively relied on the second interview in arguing its case against the defendant.

As the record demonstrates, at no point prior to the cross-examination of Fuschino by defense counsel did the state use, or suggest an intention to use, the second interview as evidence, substantively or otherwise, against the defendant. It was only after Fuschino, in a truthful, responsive answer[9] to defense counsel's question on cross-examination,[10] referenced the second

---

[9] It is undisputed that Fuschino answered defense counsel's question truthfully.

[10] Before setting forth the terms of the agreement on the record on April 11, 2022, the court stated that it "want[ed] to make it clear that the court

interview that the state sought to rely on the second interview as substantive evidence in prosecuting the defendant's case. It cannot reasonably be inferred from the state's reliance on the second interview following defense counsel's cross-examination of Fuschino that it made misrepresentations vis-à-vis the motion for joinder. Instead, we conclude that defense counsel's line of questioning on cross-examination opened the door for the state to utilize the second interview against the defendant. See *State* v. *Mark T.*, 339 Conn. 225, 236, 260 A.3d 402 (2021) ("Generally, a party who delves into a particular subject during the examination of a witness cannot object if the opposing party later questions the witness on the same subject. . . . The party who initiates discussion on the issue is said to have opened the door to rebuttal by the opposing party." (Internal quotation marks omitted.)).

Our conclusion that the state did not make misrepresentations vis-à-vis the motion for joinder is bolstered by two additional considerations. First, by failing to brief a claim of error with regard to the denial of the motion to strike Fuschino's testimony; see footnote 10 of this opinion; the defendant has abandoned any claim challenging the court's decision to allow Fuschino's initial testimony regarding the second interview to remain in evidence. See *White* v. *Latimer Point Condominium Assn., Inc.*, 191 Conn. App. 767, 777 n.6, 216 A.3d 830 (2019) (appellant's failure to brief claim results in abandonment of claim). Second, after having denied the motion to strike, the court set forth the terms of the agreement, which authorized the state, through

[was] in no way criticizing . . . Fuschino for responding as he did. As [the court] said, [Fuschino's answer] was responsive to the question that [defense counsel] had posed." The defendant does not claim on appeal that the court improperly determined that Fuschino's testimony was responsive. Indeed, as the defendant's appellate counsel conceded on appeal, the defendant has not briefed a claim of error asserting that the court's denial of the motion to strike was improper.

Fuschino's testimony on redirect examination, to introduce limited portions of the second interview. Defense counsel expressly affirmed that he agreed to the procedure detailed in the agreement, and defense counsel did not raise any objection to the agreement on the record. See *State* v. *Andres C.*, 208 Conn. App. 825, 854, 266 A.3d 888 (2021) ("When a party consents to or expresses satisfaction with an issue at trial, claims arising from that issue are deemed waived and may not be reviewed on appeal. . . . [W]e do not look with favor on parties requesting, or agreeing to, an instruction or a procedure to be followed, and later claiming that that act was improper." (Internal quotation marks omitted.)), aff'd, 349 Conn. 300, 315 A.3d 1014 (2024). Under these circumstances, the defendant has not asserted a viable claim that his constitutional rights were violated stemming from the state's representations in support of the motion for joinder.

In sum, we conclude that the defendant has failed to demonstrate that violations of his constitutional rights occurred as required under the third prong of *Golding*.[11]

The judgment is affirmed.

In this opinion the other judges concurred.

[11] In the alternative, the defendant requests reversal of the judgment of conviction pursuant to the plain error doctrine. "The plain error doctrine is based on Practice Book § 60-5, which provides in relevant part: The court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. The court may in the interests of justice notice plain error not brought to the attention of the trial court. . . . The plain error doctrine is reserved for truly extraordinary situations [in which] the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . . A party cannot prevail under [the] plain error [doctrine] unless [he] has demonstrated that the failure to grant relief will result in manifest injustice." (Internal quotation marks omitted.) *Lafferty* v. *Jones*, 225 Conn. App. 552, 572 n.26, 316 A.3d 742 (2024). For the same reasons that we reject his claim under the third prong of *Golding*, we conclude that the defendant has not "met the stringent standard for relief pursuant to the plain error doctrine." (Internal quotation marks omitted.) Id.